## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMILY FRAZER** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 13-2675** |
| **v.** | : | |
| | : | |
| **TEMPLE UNIVERSITY,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                        June 5, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a motion to dismiss filed by Defendant Temple University ("Defendant" or "Temple"), pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), which seeks the dismissal of all federal and state claims asserted against it. [ECF 1-21]. Emily Frazer ("Plaintiff" or "Frazer") opposes the motion [ECF 1-27], making the motion to dismiss ripe for disposition.[1]

For the reasons stated herein, the motion to dismiss is granted.

### BACKGROUND

On January 11, 2013, Plaintiff filed a civil rights action asserting various federal and state law claims against Temple, Andrew Cerett ("Cerett"), and Allied Barton Security Services, LLC ("Allied Barton"). The federal causes of action asserted against Temple are: civil rights claims under 42 U.S.C. §1983 ("§1983") for violating Plaintiff's substantive due process and equal

---

[1] In ruling on Defendant's motion to dismiss, this Court has also considered Defendant's reply [ECF 1-28], Defendant's notice of supplemental authority [ECF 11] and the allegations contained in the complaint [ECF 1-1].

protection rights guaranteed by the Fourteenth Amendment; illegal seizure in violation of the Fourth Amendment; creating a hostile educational environment and retaliation in violation of Title IX, 20 U.S.C. §1681; and violation of 20 U.S.C. §1092(f) (the "Clery Act").[2] The state law causes of action asserted against Temple are: negligence, intentional infliction of emotional distress, and violations of the Pennsylvania constitution. [ECF 1-1].

Defendant filed the instant motion to dismiss on March 22, 2013.[3] When ruling on this motion, this Court must accept, as true, the relevant allegations in Plaintiff's complaint, *to wit*:

Frazer is an adult female, and has been a full-time student at Temple since January 2010, (Comp. ¶¶6-7), and initially attended Temple on a full athletic scholarship to play volleyball. (*Id.* at ¶30).

Defendant Cerett is an adult male, who was a full-time student at Temple from May 2010 until May 2011. (*Id.* at ¶16). Cerett was also a student athlete with a full scholarship as a punter for the Temple football team during that same time period. (*Id.* at ¶¶17-18). When Plaintiff filed her complaint, Cerett was 21 years old, six foot five inches tall, and weighed 260 pounds. (*Id.* at ¶19).

At all relevant times, Plaintiff lived in Temple's dormitory building which has controlled access. That is, every Temple dormitory building is equipped with electronic card readers, (*Id.* at ¶37), and each dormitory resident has a student identification card that when swiped, grants access only into their own dormitory building. (*Id.* at ¶¶38, 40). When visiting another dormitory, guests must sign in and be granted access by security staff and then escorted by one of the dormitory residents. (*Id.* at ¶¶40-42). Security is required to retain a guest's identification until the guest signs out and leaves the building. (*Id.* at ¶45).

From August 2010 to May 2012, Plaintiff lived on the fifth floor of the Cecil B. Moore dormitory building with two roommates. (*Id.* at ¶46). Cerett lived on the same dormitory floor as Plaintiff with his roommate, Adam Metz, from August 2010 to December 2010, when Temple moved Cerett out of the dormitory. (*Id.* at ¶¶47, 49). Plaintiff and Cerett dated briefly on and off from August 2010 until January 2011. (*Id.* at ¶50).

---

[2] In her opposition brief, Plaintiff withdraws her claim under the Clery Act and for punitive damages under Title IX and §1983.

[3] Previously, on March 11, 2013, Defendant Allied Barton was dismissed by stipulation. [ECF 1, Doc. 16]. Defendant Cerett, acting *pro se,* filed an answer to the complaint on September 13, 2013. [ECF 16].

On January 17, 2011, Plaintiff ended her relationship with Cerett. (*Id.* at ¶51). At approximately 10 PM on the evening of January 21, 2011, Cerett entered the lobby area of Plaintiff's dormitory building visibly intoxicated to the dormitory security. (*Id.* at ¶54). Contrary to established security protocols and procedures, the dormitory security did not ask Cerett for identification or require him to sign in and/or identify the guest he was visiting. (*Id.* at ¶¶56-58). Cerett walked past security uninterrupted and took the elevator to Plaintiff's floor. (*Id.* at ¶60).

At the time, Plaintiff and some of her friends were gathered in a dormitory room of another fellow student on Plaintiff's floor. (*Id.* at ¶61). Another student, Anthony Lee, knocked on the student's dormitory room door and asked to enter. (*Id.* at ¶62). Cerett, who was hiding behind Anthony Lee when the door was opened, forced his way inside the room. (*Id.* at ¶63). Cerett tried to convince Plaintiff to speak with him, but Plaintiff and her two roommates left the room immediately and entered another dormitory room across the hall. (*Id.* at ¶¶64-65). Cerett waited outside that dormitory room, and when that door was opened, he forced his way into the room and began yelling at Plaintiff. (*Id.* at ¶¶66-68). Plaintiff left the room and ran down the hall to her own suite. (*Id.* at ¶69). Once in her suite, Plaintiff attempted to shut the door behind her, but Cerett kicked the door open, entered without permission, (*Id.* at ¶¶70-71), screamed and threatened Plaintiff, stating "if I can't have you no one can have you." (*Id.* at ¶¶72-73).

Plaintiff repeatedly asked Cerett to leave. (*Id.* at ¶77). She ran to her bedroom within the suite and attempted to shut the door, (*Id. at* ¶78), but Cerett forced his way into the bedroom, slammed the door shut, and blocked the doorway. (*Id.* at ¶79). Cerett continued his threats to kill Plaintiff, as she pleaded with him to leave and not harm her. (*Id.* at ¶¶80-81). One of Plaintiff's roommates and another male student restrained Cerett, forced him into the common area of the suite, and called Temple's police. (*Id.* at ¶¶82-84). As the police were being called, Cerett left the suite, (*Id.* at ¶85), and punched through a window in the dormitory hallway leaving blood on the walls of the hallway. (*Id.* at ¶86).

While eluding the police, Cerett called and texted Plaintiff's cell phone. (*Id.* at ¶88). Campus police instructed Plaintiff to answer a call from Cerett and coax him into telling her where he was hiding. (*Id.* at ¶89). The campus police found Cerett hiding on the third floor of the dormitory building and took him into custody. (*Id.* at ¶90). While in custody, Cerett called Plaintiff several times that evening. (*Id.* at ¶92).

Plaintiff left campus and did not return until January 24, 2011. (*Id.* at ¶¶91, 93). A disciplinary hearing before the University Student Conduct Board (Board) pertaining to the January 21, 2011 incident was scheduled for February 18, 2011. (*Id.* at ¶94). In the meantime, Cerett was permitted to remain on campus pending the hearing. (*Id.* at ¶99). During that period, Cerett repeatedly

3

followed Plaintiff, sat outside of her dormitory building, (*Id.* at ¶¶101-103), and on one occasion, followed Plaintiff into the cafeteria and stood directly beside her while she conversed with a fellow student. (*Id.* at ¶104). Plaintiff informed the University of Cerett's conduct but no corrective measures were taken, though Plaintiff was temporarily banned from the Edge dormitory building. (*Id.* at ¶¶105-107).

On February 18, 2011, the Board held a disciplinary hearing related to the January 21, 2011, incident and issued a decision on March 18, 2011. (*Id.* at ¶¶94-95). Cerett was found in violation of various sections of the Student Conduct Code and suspended until August 29, 2011. (*Id.* at ¶¶96-97).

Throughout this period, Plaintiff continued to participate on the Temple volleyball team. (*Id.* at ¶112). In May 2012, Plaintiff was removed from the volleyball team and her scholarship was revoked. (*Id.* at ¶114). Following a grievance procedure, although 50% of her scholarship was reinstated on July 9, 2012, (*Id.* at ¶116), Plaintiff was not permitted to return to the volleyball team. (*Id.* at ¶117).

Plaintiff also contends that Temple was aware of previous incidents by Cerett against other students, that he had psychological and anger issues, and that he had threatened to harm himself. (*Id.* at ¶118-126). On one occasion, in the November 2010 Fall semester, Cerett threatened to kill his roommate and fellow football teammate, Adam Metz. (*Id.* at ¶¶128, 131). Metz reported the incident to Temple and his football coaches, (*Id.* at ¶¶127-129, 133), and immediately moved out of the room he shared with Cerett. (*Id.* at ¶134). Plaintiff contends that despite university policy permitting suspension for violent and threatening behavior towards oneself or a fellow student, Temple failed to take proper disciplinary measures against Cerett after the incident with his roommate. (*Id.* at ¶¶137-138).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must

4

"show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

In the complaint, Plaintiff asserts that Temple violated her due process and equal protection rights guaranteed by the Fourteenth Amendment, and her right to be free from illegal seizure under the Fourth Amendment.[4] Each of these claims will be addressed separately.

To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

[4] Plaintiff's complaint includes a "Summary of Claims" in which she states that she seeks additional relief under the Fifth and Ninth Amendments. However, nowhere in her complaint does Plaintiff make claims or allege facts under either of these constitutional amendments. Regardless, no relief is warranted because the Ninth Amendment does not provide a source of substantive rights, and the Fifth Amendment is only applicable to the Federal Government. *See B&G Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n. 14 (3d Cir. 2011) (treating a due process claim against federal defendants as a claim under the Fifth Amendment's Due Process Clause, "as the Fourteenth Amendment applies only to acts under color of state law whereas the Fifth Amendment applies to actions of the federal government.")

5

committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). Section 1983 does not provide substantive rights, but instead, "provides a remedy for the deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). Thus, to establish a §1983 violation, Plaintiff must allege facts sufficient to establish that Temple, acting under color of state law, deprived Plaintiff of a right secured by the Constitution or by the laws of the United States. *See Robb v. City of Philadelphia*, 733 F.2d 286, 290-91 (3d Cir. 1984). For purposes of §1983, it is undisputed that Temple is a municipal subdivision. *See Franks v. Temple Univ.*, 2011 WL 1562598 (E.D. Pa. Apr. 26, 2011) (citing *Molthan v. Temple Univ.*, 778 F.2d 955, 961 (3d Cir. 1985).

A governmental entity, however, may not be held liable under §1983 for constitutional violations caused solely by its employees or agents under the principle of *respondeat superior*. *Monell v. New York Department of Social Services*, 463 U.S. 658, 690 (1978). Rather, a municipality may be held liable under §1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* at 694. That is, liability may be imposed on a municipality where its official "policy or custom" "causes" an employee to violate another's constitutional rights. *Id.*; *see also Brown v. School Dist. of Philadelphia*, 456 F. App'x 88, 90 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010)). As set forth by the Third Circuit, a government policy or custom can be established in two ways:

> Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law,

6

> "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

"Custom requires proof of knowledge and acquiescence by the decision maker." *McTernanan v. York*, 564 F.3d 636, 658 (3d Cir. 2009). In either instance, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Andrews*, 895 F.2d at 1480.

To establish municipal liability, however, a plaintiff must first show an underlying constitutional violation. *See Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury."). Therefore, in order to state a §1983 claim against Temple, Plaintiff must allege facts to demonstrate: (1) the deprivation of a constitutional right; and (2) that such deprivation arose out of an official policy or custom of Temple. With these legal principles in mind, this Court addresses each of Plaintiff's §1983 claims below.

### *Plaintiff's Fourteenth Amendment Due Process Claim*

Plaintiff alleges that Temple violated her Fourteenth Amendment due process rights by failing to protect her from the verbal and physical intimidation by fellow Temple student, Cerett. The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1. While courts recognize that the Due Process Clause protects an individual's interest in his or her bodily integrity, the Constitution, however, imposes no affirmative duty on municipalities to protect citizens from the acts of private individuals. *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189,

195-96 (1989); *Morrow*, 719 F.3d at 166. Specifically, in *DeShaney*, the Supreme Court noted that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

The Third Circuit has held that *DeShaney* "stands for the harsh proposition that even though state officials know that a person is in imminent danger of harm from a third party, the fourteenth amendment imposes upon those state officials no obligation to prevent that harm." *Horton v. Flenory*, 889 F.2d 454, 457 (3d Cir. 1989); *see also Morrow*, 719 F.3d at 166 (stating as "a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.") (quoting *DeShaney*). Following *DeShaney*, the Third Circuit has held that a state may be liable for its failure to protect its citizens against private violence when the state (1) enters into a "special relationship" with the plaintiff or (2) creates a danger which results in foreseeable injury to a discrete plaintiff. *See Ye v. United States*, 484 F.3d 634, 637 (3d Cir. 2007); *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996).

In light of the above-cited case law, this Court finds that Temple generally has no constitutional obligation to prevent private, student-on-student violence, *i.e.*, Cerett's alleged assault of Plaintiff. This Court will consider, however, whether either of the two exceptions to the general rule applies to Plaintiff's claims.

## 1. Special Relationship Exception

As stated, while government entities generally do not have a constitutional obligation to protect citizens from the conduct of private individuals, the Constitution does "impose[] upon the

8

State affirmative duties of care and protection" where a "special relationship" exists between the state and a particular individual. *Morrow*, 719 F.3d. at 167. A state actor's duty to protect such citizens does not arise merely from the state actor's "knowledge of the individual's predicament or from its expressions of intent to help him . . . ." *Id.* at 168. Rather, such a duty arises only where the state actor takes a person into its custody without consent, and by virtue of this custody, limits the individual's freedom to act. *Id.* A "special relationship" exists only in the limited circumstances where the state has taken a person into custody or otherwise prevented that person from helping him/herself. *Kneipp*, 95 F.3d at 1204-05; *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1370 (3d Cir. 1992). To create a "special relationship," the "state must affirmatively act to curtail the individual's freedom such that he or she can no longer care for him or herself." *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 379-80 (E.D. Pa. 1995), *aff'd*, 91 F.3d 125 (3d Cir. 1996); *see also Torisky v. Schweiker*, 446 F.3d 438, 446 (3d Cir. 2006) (holding that the special relationship exception "must be confined to cases in which a person is taken into state custody against his will.").

The Third Circuit has repeatedly held that publicly-funded schools do not have a special relationship with their students that would create "a *constitutional* duty to protect students from private actors." *Morrow*, 719 F.3d at 170; *see also D.R.*, 972 F.2d at 1369-72 (holding that no special relationship existed between the school and student); *Brown v. School District of Philadelphia*, 456 F. App'x 88, 90 n. 5 (3d Cir. 2011) (noting the existence of the special relationship exception, but stating "a student in school does not have that relationship with the state.").

In light of the Third Circuit's cited case law, this Court cannot find that a "special relationship" existed between Temple and Plaintiff. Just as a public high school does not have a

9

special relationship with its minor children sufficient to create a constitutional duty to protect those students from the harmful acts of other students, neither does a publicly-funded university with regard to its adult students who voluntarily elect to enroll in the university.[5]

## 2. State-Created Danger Exception

As to the second exception, the Third Circuit adopted the co-called "state-created danger" exception in *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996). To assert a viable §1983 claim under the "state-created danger" exception, Plaintiff must allege facts to support each of the following elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) Temple acted with a degree of culpability that shocks the conscience; (3) there existed some relationship between Temple and Plaintiff such that Plaintiff was a foreseeable victim of Temple's acts or a member of a discrete class of persons subjected to the potential harm brought by Temple's actions; and (4) Temple used its authority to create a danger to Plaintiff or that rendered Plaintiff more vulnerable to danger than had Temple not acted at all. *See Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). In the context of the state-created danger analysis, negligent conduct does not rise to the level of conscience shocking. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006).

In its motion, Defendant argues that the facts alleged in Plaintiff's complaint fail to satisfy the second and fourth elements. As set forth below, this Court finds that Plaintiff failed to meet the fourth element, and, therefore, it will limit its analysis to this element. *See Morse v.*

---

[5] Neither party, nor this Court has identified any authoritative decision in which a public university was held to have such a constitutional obligation to its students.

10

*Lower Merion School Dist.*, 132 F.3d 902, 914 (3d Cir. 1997) (holding that plaintiff's failure to meet any one of the elements requires dismissal of claim).[6]

To establish the fourth element of a state-created danger claim, Plaintiff must allege facts showing that Temple: (1) exercised its authority; (2) took an affirmative action; and (3) that this action created a danger to Plaintiff or rendered Plaintiff more vulnerable to danger than had Temple not acted at all. *See Ye*, 484 F.3d at 639. "[I]t is [the] misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. In other words, "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *D.R.*, 972 F.2d at 1374.

The Third Circuit has repeatedly rejected state-created danger claims in cases involving student-on-student school violence, even where school officials were alleged to have known of the dangerous conditions within the school that ultimately resulted in injury to the plaintiff, on the ground that the schools did not affirmatively act to create the danger. *See e.g.*, *Morrow*, 719 F.3d at 178-179 (holding that the school's failure to expel harassing student, and permit the student to return following a suspension and board plaintiff's bus, did not constitute requisite affirmative act for state-created danger); *Brown*, 456 F. App'x at 89-90 (holding that school's failure to expel or appropriately punish a violent student does not constitute a sufficient affirmative act for state-created danger); *D.R.*, 972 F.2d 1364 (holding that school's failure to adequately address and remediate known physical and sexual misconduct by students did not constitute an affirmative act for state-created danger).

---

[6] This Court makes no findings as to whether Plaintiff has alleged facts sufficient to meet any of the other three elements.

11

In *Brown*, 456 F. App'x 88, the plaintiff, a sophomore high school student with mild mental retardation and her mother advised a teacher and an assistant principal that another student had assaulted the plaintiff after she had failed to meet him in the library for oral sex. *Id.* at 90. The teacher and/or assistant principal promised that the school would provide the plaintiff with one-on-one adult supervision. Notwithstanding the promise, two weeks later plaintiff was sexually assaulted by five fellow students during the lunch hour at school. *Id.* at 89. Plaintiff asserted that the school was liable under §1983 for its failure to have fulfilled its promise of providing the plaintiff adult supervision and its failure to expel or appropriately discipline violent students. *Id.* at 90. Affirming the district court's dismissal of the claims, the Third Circuit held that the plaintiff had failed to allege the required affirmative acts on the part of the school to establish a state-created danger. *Id.* at 92.

Similarly, in *Pagan v. City of Philadelphia*, 2012 WL 1965386 (E.D. Pa. May 31, 2012), the plaintiff, a special needs student, was severely beaten by another student in a school stairwell. *Id.* at *1, 3. The plaintiff alleged that the school district violated his substantive due process right to personal bodily integrity through its acquiescence in a policy or custom of failing to provide adequate security to students. *Id.* at *2-4. The plaintiff had further alleged that the school was aware that other students had been assaulted by students in the school stairwells. *Id.* at *5. The court dismissed the plaintiff's due process claim because the plaintiff had alleged school conduct that amounted only to omissions and held that "only the affirmative exercise of state authority is actionable as state-created danger." *Id.* at 27.

This case is, in many respects, similar to those discussed above and *Morrow*, 719 F.3d 160. In *Morrow*, two sisters were subjected to a series of ongoing verbal threats and physical assaults by a fellow student including, a physical attack in the school lunch room, an attempt to

throw one of the victims down the school's stairs, and a strike to one victim's throat. *Id.* at 164. Each of these incidents was reported to the school. In response, the school temporarily suspended the aggressor; and a juvenile court adjudicated the aggressor delinquent and ordered the aggressor to have no contact with the victims. *Id.* Despite the court order and the school's knowledge of the incidents, the school district failed to keep the aggressor away from the victims, and the verbal and physical assaults continued. *Id.* The school advised the victims' parents to relocate their children to another school, and declined to remove the aggressor. *Id.* at 164-65. The victims brought §1983 actions against the school for the alleged violations of the victims' due process rights, arguing that the defendant public school had a duty to protect them because the school created or exacerbated a dangerous condition. *Id.* at 177. The Third Circuit held that a public school's failure to use its disciplinary authority and to follow its own internal procedures was not sufficient to establish that the state affirmatively used its authority to create a danger to the student. *Id.* at 177-79.

Like the plaintiffs in *Morrow,* Plaintiff in this matter has not pled any facts to establish that Temple affirmatively acted to place her in danger or increased danger. Rather, Plaintiff has alleged only that Temple did not do enough to prevent her from being harmed once it knew of Cerett's propensity for violence following his incident with his male roommate. While Plaintiff contends that these alleged *omissions* caused her injuries, she has failed to allege any affirmative conduct by Temple that created a danger to Plaintiff or that exacerbated a danger that Plaintiff otherwise faced. Absent allegations of such affirmative conduct by Temple, Plaintiff has failed to allege sufficient facts to establish a viable claim under the state-created danger exception.[7]

---

[7] Though Plaintiff also seeks to impose liability on Temple based upon its alleged failure to properly implement and enforce its own security and discipline policies and procedures, as alleged, Temple's failure to follow those protocols amounts to, at most, negligence, and not a constitutional violation. *Cf.,*

13

## *Plaintiff's Fourth Amendment Claim*

Plaintiff also asserts that Temple violated her Fourth Amendment rights by subjecting her to an illegal seizure. A person is seized under the Fourth Amendment when "his freedom of movement is restrained" either "by means of physical force or a show of authority." *Gwynn v. City of Philadelphia*, 719 F.3d 295, 300 (3d Cir. 2013). An unconstitutional seizure is defined as "a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989).

Plaintiff's complaint is completely devoid of any factual allegations to support an intentional "seizure" of her *by Temple* within the meaning of the Fourth Amendment. Plaintiff's complaint does not allege that Temple, through any of its agents, at any point, physically restrained her or used its authority in any way to confine her. The only facts pertaining to a "seizure" are those relating to Cerett's actions of blocking Plaintiff's passage from her dormitory room on January 21, 2011. (Comp. ¶79). Plaintiff has not alleged facts, nor can she, that can establish Cerett as either a state actor or a Temple agent. Plaintiff's lone allegation as to Cerett's seizure of her is insufficient to establish a Fourth Amendment claim against Temple, and, therefore, this claim against Temple fails.

## *Plaintiff's Equal Protection Claim*

In addition, Plaintiff asserts a §1983 claim based upon Temple's violation of her constitutional right to equal protection. To succeed on a §1983 equal protection claim, Plaintiff must allege facts demonstrating "purposeful discrimination" and that she "receiv[ed] different treatment from that received by other individuals similarly situated." *Andrews*, 895 F.2d at 1478; *see also Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009).

*Morrow*, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here.").

14

To meet the *prima facie* elements, Plaintiff must allege that: (1) she was a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class. *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2005); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992).

In the complaint, Plaintiff fails to allege facts to show that she was the victim of purposeful discrimination or that she was treated differently because of a protected characteristic. As set forth above, Plaintiff bases her claims on Temple's alleged failure to protect her from Cerett's aggressive conduct. Plaintiff does not allege, however, that Cerett's conduct was targeted at women or was sexual in nature. To the contrary, Plaintiff's complaint describes only one other incident in which Cerett assaulted and/or harassed someone, *i.e.*, his former male roommate.

Plaintiff's complaint is also devoid of any allegation that Temple treated her less favorably than it treated Cerett's male victim. In fact, Plaintiff makes no attempt to identify any similarly situated individuals who were treated differently than she was. In addition, Plaintiff alleges that following the January 21, 2011, incident, Temple held a disciplinary hearing against Cerett within one month and suspended him for five months. Based on these alleged facts, this Court cannot find that Frazer received disparate treatment on the basis of her gender or any other protected characteristic in violation of the equal protection clause.

## *Plaintiff's Title IX Hostile Education Environment Claim*

In addition to her constitutional claims, Plaintiff asserts that Temple created a hostile educational environment in violation of Title IX, 20 U.S.C. §1681. This statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be

15

denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a).

The Supreme Court has recognized that a public school student may bring suit against a school under Title IX for student-on-student sexual harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999). To recover under the statute in such a case:

> a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities.

*Id.* at 651. A plaintiff must also allege facts showing that the school acted "with deliberate indifference to known acts of harassment in its programs or activities." *Id.* at 633.

For example in *Davis*, a fifth grade student endured continued sexual harassment by one of her classmates over a period of five months. *Id.* at 653. Although the harassment was reported to teachers and the principal, the school board "made no effort whatsoever either to investigate or to put an end to the harassment," even after the student-aggressor pled guilty to criminal sexual misconduct. *Id.* at 654. The Supreme Court held that under these circumstances, the school board's deliberate indifference to student harassment warranted Title IX liability. In reaching its decision, however, the Court cautioned:

> We stress that our conclusion here – that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment – does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. . . School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.

16

*Id.* at 648. The Court explained that in order to avoid liability, the school "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 649. The Court further stated that a "university might not . . . be expected to exercise the same degree of control over its students that a grade school would enjoy," and opined that "in an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.*

Thus, under *Davis*, to assert a viable hostile education environment claim under Title IX, Plaintiff must allege facts sufficient to establish that Temple acted "deliberately indifferent to sexual harassment, of which [Temple had] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive [Plaintiff] of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. 650. Reading the allegations in Plaintiff's complaint in the light most favorable to Plaintiff, however, there are no factual allegations that Temple acted with deliberate indifference to *known acts* of sexual harassment. For example, Plaintiff does not allege that she notified Temple of any sexual harassment by Celett prior to the January 21, 2011, assault or that any such sexual harassment had previously occurred. At most, Plaintiff alleges that Temple was placed on notice of Cerett's propensity for violence as it related to his former male roommate. (Comp. ¶171). While Cerett's previous conduct, as alleged, was certainly abusive and intimidating, this conduct was not directed at Plaintiff, women, nor was it sexual in nature. To establish actual notice for purposes of a hostile education environment under Title IX, the prior action by Cerett must have been directed at Plaintiff or some other similar victim because of her sex. Plaintiff's complaint contains no such allegations. As such, Plaintiff has not alleged facts showing that Temple had actual knowledge

of any sexual harassment by Cerett. Therefore, Temple could not have acted with deliberate indifference.

Plaintiff has also failed to assert a viable Title IX claim against Temple based upon Cerett's alleged conduct between the January 21, 2011, incident and the February disciplinary hearing, because Cerett's alleged conduct does not constitute "sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to" have deprived Plaintiff "of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. What Plaintiff contends is that following the January 21, 2011, incident and pending the disciplinary hearing, Cerett was permitted to remain on campus, and that during that time, he followed her, sat outside her dormitory, and "followed Frazer into the cafeteria and stood directly beside her and stared at her while she was having a conversation with a fellow student." (Comp. ¶¶99-104). According to Plaintiff, she reported Cerett's conduct to university security, but no corrective measures were taken prior to Cerett's disciplinary hearing. (*Id.* at ¶¶105-06). As alleged, Cerett's conduct, which can be viewed as that of a jilted boyfriend, does not amount to sexual harassment or harassment of any kind that is sufficiently "severe, pervasive, and objectively offensive" for liability to attach under *Davis*. *Cf.*, *O'Hara v. Colonia School Dist.*, 2002 U.S. Dist. LEXIS 12153, at \*18-19 (E.D. Pa. Mar. 25, 2002) (holding that plaintiff's allegations that harassing student continued to follow and stare at plaintiff after he was readmitted to school did not constitute the requisite severe and pervasive sexual harassment for Title IX liability); *Bougher v. Univ. of Pittsburgh*, 713 F. Supp. 139, 146 (W.D. Pa. 1989) (holding that allegations that defendant stared at plaintiff in public was not actionable harassment of any kind, including sexual harassment).

18

Plaintiff has also failed to allege facts sufficient to establish that Temple exhibited deliberate indifference to her claims of sexual harassment. As alleged, a disciplinary hearing was held within a month of the incident, which resulted in Cerett being suspended. (Comp. ¶¶ 94 and 97). In light of Temple's relatively prompt remedial action, Temple's conduct was not "clearly unreasonable," as required by *Davis* for the imposition of Title IX liability. *Davis*, 526 U.S. at 648-49. Therefore, Plaintiff's hostile educational environment claim is dismissed.

## *Plaintiff's Title IX Retaliation Claim*

Plaintiff also asserts a retaliation claim under Title IX based upon Temple's action of removing her from its volleyball team and revoking her athletic scholarship. Although Title IX does not explicitly provide a cause of action for retaliation, the Supreme Court has interpreted Title IX's prohibition of sexual discrimination to include retaliation. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). Thus, to assert a viable claim for retaliation under Title IX, Plaintiff must plead facts sufficient to plausibly show that Temple "retaliated against [her] because [she] complained of sex discrimination." *Id.* at 184. Plaintiff must allege: (1) that she engaged in conduct protected by Title IX; (2) that Temple took adverse action against her; and (3) that a causal link existed between the protected conduct and the adverse action. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994); *Yan v. Penn State University*, 529 F. App'x 167, 171 (3d Cir. 2013); *Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe Area School Dist.*, 2011 WL 613383, at *4 (M.D. Pa. Feb. 11, 2011).

As the basis of her retaliation claim, Plaintiff alleges that Temple removed her from its volleyball team and revoked her athletic scholarship in May 2012 in retaliation for her complaint to Temple in January and February 2011 as to Cerett's conduct. In its motion, Defendant argues that Plaintiff has failed to allege facts sufficient to satisfy the third prong. Under the third prong,

Plaintiff must plead facts that could establish a causal connection between her protected activity and Temple's adverse action. *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Cooper v. Menges*, 541 F. App'x 228, 232 (3d Cir. 2013) (citations omitted).

In *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), the Supreme Court instructed that temporal proximity cannot support an inference of causal connection unless the alleged retaliatory action and the protected activity were "very close" in time, and that action taken twenty months after the protected activity "suggests, by itself, no causality at all." *See also Kriss v. Fayette County*, 504 F. App'x 182, 188-89 (3d Cir. 2012) (holding passage of nine months between protected activity and alleged retaliation insufficient to establish causation and stating "we have found, no cases where a gap of more than even two months was found to be unusually suggestive."); *Wadhwa v. Sec'y Dep't of Veterans Affairs*, 505 F. App'x 209, 215-16 (3d Cir. 2012) (holding passage of one year between protected activity and alleged retaliation insufficient to establish causation).

Here, as stated, Plaintiff simply alleges that Temple removed her from its volleyball team and revoked her athletic scholarship in May 2012 in retaliation for her complaint to Temple in January and February 2011 about Cerett, more than a year earlier. (Comp. ¶¶114-15, 150-51). Without more and under the case law cited, this Court cannot find that a 15-month gap is so "unusually suggestive" to raise Plaintiff's right to relief for Title IX retaliation "above the speculative level." *Twombly*, 550 U.S. at 555.

20

As to demonstrating "a pattern of antagonism coupled with timing to establish a causal link," Plaintiff must allege facts showing "actual antagonistic conduct or animus" in "the intervening period," between the protected activity and the retaliation. *Kriss*, 504 F. App'x at 188 (citing *Marra*, 497 F.3d at 302). Here, Plaintiff has not alleged any such antagonistic conduct or animus occurring between the time she allegedly reported Cerett's conduct and the time she was removed from the volleyball team. Absent such allegations, this Court finds that Plaintiff has failed to plead facts sufficient to suggest a causal connection between Plaintiff's protected activity and Temple's alleged retaliation.

### *Plaintiff's Remaining State Law Claims*

In the complaint, Plaintiff asserts various state law claims against Temple and Cerett. Plaintiff relies upon supplemental jurisdiction to support this Court's jurisdiction over these state law claims. (*See* Comp. at ¶4). Because this Court has dismissed all of Plaintiff's federal claims over which it has original jurisdiction, pursuant to 28 U.S.C. §1367(c)(3), it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, including those remaining against Cerett. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999); *Eberts v. Wert*, 1993 WL 304111, at *5 (E.D. Pa. Aug. 9, 1993) (holding that "Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed.").

### *Leave to Amend*

Although the Third Circuit has directed that a district court must ordinarily provide a civil rights plaintiff an opportunity to file an amended complaint where the original complaint is

21

subject to dismissal under Rule 12(b)(6), *see Phillips*, 515 F.3d at 245 (reiterating the rule that leave to amend must be granted *sua sponte* in civil rights actions, "unless such an amendment would be inequitable or futile."), it is this Court's view that any such attempt to amend here would be legally futile. This Court has dismissed Plaintiff's civil rights claims against Temple, not because Plaintiff has failed to provide a well-pleaded complaint, but rather, because the detailed facts set forth in her complaint fail as a matter of law to establish a constitutional violation for purposes of §1983 liability under either the "special relationship" or "state-created" danger exceptions. In addition, this Court cannot foresee any additional facts that could overcome the 15 month period between Plaintiff's alleged protected complaint under Title IX and Plaintiff's removal from the volleyball team and the revocation of her athletic scholarship. It is this Court's view, therefore, that any attempt to amend the complaint would be futile.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted, and Plaintiff's federal claims are dismissed with prejudice. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, J.